IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**DERRICK RAY BACON,**

    **Plaintiff,**

v.                                                          CASE NO. 5:14-cv-37-RS-CJK

**FRANK MCKEITHEN, in his official
and individual capacities, and RYAN
ROBBINS and CHAD VIDRINE, in their
individual capacities,**

    **Defendants.**

_____/

## ORDER

Before me are Defendant McKeithen's Motion to Dismiss (Doc. 38) and Plaintiff's Response in Opposition (Doc. 43).

Derrick Bacon sued Bay County Sheriff Frank McKeithen in his individual and official capacities and alleged supervisory liability for alleged constitutional violations by two officers. The officers, allegedly in violation of the First and Fourth Amendments, arrested Bacon for videorecording an officer during a traffic stop. I find that Bacon has properly stated a claim against McKeithen for supervisory liability under both a "custom or policy" theory and a "ratification" theory, but has failed to state a claim under a "failure-to-train" theory. The relief

requested in Defendant's Motion is therefore **GRANTED IN PART, DENIED IN PART.**

## I. STANDARD OF REVIEW

To overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S. Ct. 2229, 2232 (1984). I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir. 1999)).

## II. BACKGROUND

Officer Chad Vidrine, a defendant, pulled over Derrick Bacon, the plaintiff, as part of a routine traffic stop on September 7, 2012. (Doc. 11, p. 5-6). Unbeknownst to Officer Vidrine, Bacon recorded the stop on his cell phone. (*Id.* at p. 6). On November 7, Bacon revealed in open traffic court that he made the recording. (*Id.*). Officer Robbins, another defendant, and Vidrine then handcuffed Bacon despite his protest that his actions were constitutionally protected and

placed him in the back of their car. (*Id.*). They accused Bacon of illegal wiretapping in violation of Fla. Stat. § 934.03. They later removed the handcuffs and allowed Bacon to leave. (*Id.* at 7-8). However, they kept his cell phone as evidence, which they submitted to the State Attorney to determine whether they had probable cause to search the phone. (*Id.*). The State Attorney later found that there was insufficient evidence and declined to move forward with the prosecution. (*Id.* at 45).

On May 29, 2014, Bacon's attorney received an email from a representative in the Sheriff's office, seemingly in response to the allegations in this action, which stated that, until ambiguities regarding "the statute in question" are resolved, "the Sheriff's Office willenforce [sic] state statutes to the letter of the law." (Doc. 34 at 33).

Bacon filed a complaint under 42 U.S.C. § 1983 against Vidrine and Robbins in their individual capacities alleging violations of the First Amendment right to free speech, the Fourth Amendment rights prohibiting false arrest and illegal seizure of property, and the Sixth Amendment right to procedural due process. He also alleged supplemental state law claims for malicious prosecution, intentional infliction of emotional distress, and slander per se.  Bacon also filed similar complaints against the officers' supervisor, Bay County Sheriff Frank McKeithen, in both his individual and official capacities.

On August 28, 2014, I issued an Order (Doc. 33) ruling on motions by Vidrine, Robbins, and McKeithen to dismiss Bacon's Third Amended Complaint. I dismissed Bacon's state law claims and Sixth Amendment claims, and allowed his First and Fourth Amendment claims to proceed against Vidrine and Robbins (but found that they were not entitled to qualified immunity based on the allegations in the Complaint). Because Bacon attempted to present additional evidence against McKeithen in his memorandum in response to that motion, I deferred analysis of the federal claims against McKeithen and allowed Bacon to amend his complaint.

McKeithen now moves to dismiss Bacon's Fourth Amended Complaint.

### III.   ANALYSIS

Bacon alleges three counts against McKeithen individually for violation of his First and Fourth Amendment rights (Counts I, IV, and VII) and one "Monell claim" against McKeithen in his official capacity (Count X).

I construe the First and Fourth Amendment claims against McKeithen in his individual capacity to allege that McKeithen personally implemented policies which caused violations of Bacon's constitutional rights. Such claims may be actionable, although the officer may be protected by qualified immunity. *See Hafer v. Melo*, 502 U.S. 21, 31, 112 S. Ct. 358, 365, 116 L. Ed. 2d 301 (1991).

I construe the remaining "Monell claim" against McKeithen to be supervisory liability claims under § 1983 alleging that McKeithen, in his official

capacity, should be liable for the alleged First and Fourth Amendment violations committed by Officers Robbins and Vidrine. Official capacity claims generally are only another way of pleading an action against an entity of which an officer is an agent (in this case, Bay County). *Hafer,* 502 U.S. at 25.

### a. *Official Capacity Claims*

Because McKeithen has not asserted a qualified immunity defense, I first address the official capacity claims.

To impose § 1983 liability on a municipality or officer in his official capacity, a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A policy is a decision officially adopted by the municipality, or created by an official of such rank that the official could be said to be acting on behalf of the municipality. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is a practice that is so settled and permanent that it takes on the force of law. *Id.*

I have already decided that Bacon has adequately pleaded that his constitutional rights were violated by Officers Vidrine and Robbins. (*See* Doc. 33).

Bacon appears to be bringing his claims against McKeithen on three theories—first, that the County had a custom or policy amounting to deliberate

indifference to his constitutional rights; second, that the County failed to train its officers; and third, that McKeithen delegated his policymaking authority to his officers and subsequently ratified their unconstitutional conduct.

## 1. *Custom or Policy*

Bacon argues that the County had a custom or policy amounting to deliberate indifference his constitutional rights. As evidence of this policy, he attaches an email from a representative of the Bay County Sheriff's office, seemingly in response to the allegations in this case, stating that, until ambiguities regarding "the statute in question" are resolved, "the Sheriff's Office willenforce [sic] state statutes to the letter of the law." (Doc. 34 at 33).

Although the Complaint does not provide much background about the email, taken in the light most favorable to the plaintiff, it appears to provide some evidence of a policy of the Sheriff's Office that could amount to a deliberate indifference to constitutional rights. The "statute in question" appears to be Fla. Stat. § 934.03, which is the statute on which the officers relied when arresting Bacon. Indeed, this seems to be the only "statute" that might be in question in this litigation, on which there are "conflicting opinions." (Doc. 34 at 33).

I have already determined that Fla. Stat. § 934.03 cannot reasonably be read in light of long standing Eleventh Circuit precedent to mean that it is illegal to record officers in the course of ordinary traffic stops. (*See* Doc. 33). However, the

email states that "[u]ntil [legal issues are clarified], the Sheriff's office will enforce state statutes to the letter of the law." (Doc. 34 at 33). While this phrase is ambiguous, it could reasonably be interpreted—in the light most favorable to the plaintiff—to mean that the Sheriff's office will continue to enforce Fla. Stat. § 934.03, the statute at issue, against citizens like Bacon who record police officers in the line of duty even where there is no reasonable expectation of privacy. This is a logical reading of the email, as it was sent to Bacon's counsel and was most likely in response to an inquiry at least somewhat specific to Bacon's litigation. Although the Complaint did not explicitly establish the factual background of the email, the email, combined with the entire context of the Complaint, is sufficient to put the County on notice of the claims being alleged against it. This is interpretation of the email is at least "plausible" under the rule in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

If the e-mail in fact means that the Sheriff adopted a policy of continuing to enforce § 934.03 against citizens like Bacon, then he has adopted a policy that amounts to deliberate indifference to constitutional rights. Because Bacon alleged that the two officers violated Bacon's rights acting pursuant to this policy, it is "plausible" that this policy caused those violations. Bacon has thus sufficiently stated a claim for municipal liability based on policy or custom.

## 2. Failure to Train

A supervisor or municipality may be liable for failing to train employees—another form of a custom or policy—only where the failure amounts to deliberate indifference to the rights of persons with whom the officer come into contact. *Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1052 (11th Cir. 2014) (citations and quotations omitted). The supervisor must know of a need to train the officers and deliberately fail to take action. *See Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998). The officials must be on "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" and "choose to retain that program." *Connick v. Thompson*, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). Claims for municipal liability are at their "most tenuous" when the claims turn on a failure to train. *Id*. at 1359.

Bacon has failed to allege that McKeithen or any other Bay County official was on notice in September of 2011 that its failure to train its officers was causing its officers to violate citizens' constitutional rights. He cites no other instance in which the alleged failure to train caused officers to violate citizens' constitutional right to record police officers in certain contexts, and it would be inconceivable for the department to be on notice of its failure to train when the issue had never previously arisen. *See, e.g., Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.

1990) (noting "no evidence of a history of widespread prior abuse by Department personnel that would have put the sheriff on notice of the need for improved training or supervision."). Although Bacon cites some national media attention on the issue of recording police officers, that attention was not sufficient to put the Sheriff of Bay County on notice that it was "plainly obvious," *id.*, that he had a deficient training program for his officers on the issue of recording.

Bacon thus fails to state a claim for municipal liability on a failure-to-train theory. Because this is his Fourth Amended Complaint, these claims must be dismissed with prejudice in the interest of judicial economy.

### 3.  *Delegation and Ratification*

County liability on the basis of ratification arises when a subordinate official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority. *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). The plaintiff must demonstrate that the policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis. *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1189 (11th Cir. 2004) (citations and quotations omitted).

The email, again read in the light most favorable to the plaintiff, appears to ratify the officers' decision to arrest Bacon for making the recording. The

Sheriff's office, by affirming that it will continue to prosecute citizens for recording officers, not only approved Bacon's arrest, but also the basis of the arrest—criminalizing recording police officers pursuant to First Amendment rights.

### b.   *Individual Capacity Claims*

A supervisor may be liable in his individual capacity where he personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Causal connection may established either when (1) a history of widespread abuse puts the responsible supervisor on notice of a need to correct the alleged deprivation, or (2) when the supervisor's custom or policy results in deliberate indifference to constitutional rights or facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and quotations omitted).

McKeithen has not raised a defense of qualified immunity. The Complaint adequately alleges that McKeithen was personally responsible for the alleged unconstitutional policy of the Sheriff's Department, because he was the Sheriff's Office's highest decision maker and his personal office was responsible for the

email that confirms the policy. Similarly, he is personally responsible for the ratification of Vidrine and Robbins's conduct, as his office sent the ratifying email.

Therefore, these claims may proceed against McKeithen individually to the same extent that they may proceed against him in his official capacity.

## IV.    CONCLUSION

The relief requested in Defendant McKeithen's Motion to Dismiss (Doc. 38) is **GRANTED IN PART, DENIED IN PART**. Bacon's claims against McKeithen in both his individual and official capacities that rely on a failure-to-train theory are **DISMISSED WITH PREJUDICE**. The Motion is denied in all other respects, including claims against McKeithen in both his individual and official capacities that rely on a custom-or-policy theory or a ratification theory.

**ORDERED** on October 14, 2014.


/S/ Richard Smoak

**RICHARD SMOAK
UNITED STATES DISTRICT JUDGE**